**Michael POTTER and Brett Boyer, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**BLUE CROSS BLUE SHIELD OF MICHIGAN, Defendant.**

**Case No. 10–cv–14981.**

United States District Court, E.D. Michigan, Southern Division.

Signed March 31, 2014.

Brian M. Saxe, Mantese, Honigman, Rossman, Gerard V. Mantese, Mantese Assoc., David F. Hansma, Mantese and Rossman, Troy, MI, John J. Conway, III, Royal Oak, MI, for Plaintiffs.

Dennis J. Levasseur, Bodman, Jason R. Gourley, Bodman LLP, Nathan D. Dupes, Bodman PLC, Detroit, MI, G. Christopher

Bernard, James J. Walsh, Bodman, Ann Arbor, MI, for Defendant.

***ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION** (document no. 167), **AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS** (document no. 128)*

STEPHEN J. MURPHY, III, District Judge.

This is an ERISA denial-of-benefits class action, filed by named plaintiffs Michael Potter and Brett Boyer against Defendant Blue Cross Blue Shield of Michigan ("BCBS"). Plaintiffs sought benefits they were allegedly denied for Applied Behavior Analysis ("ABA") therapy for autism as well as declaratory and injunctive relief. The Court subsequently certified a class of individuals enrolled in or covered by a plan offered or administered by BCBS and governed by ERISA who were denied a claim for ABA therapy on the grounds that, pursuant to BCBS' 2010 Medical Policy, BCBS deemed the treatment to be "experimental." On March 30, 2013, 2013 WL 4413310, the Court entered judgment against BCBS and in favor of Plaintiffs, declared that BCBS' characterization of ABA therapy as "experimental or investigative" as applied to the claims of the class members, was and is arbitrary and capricious, overturned all denials of benefits on that basis, ordered the class members' claims for coverage of ABA therapy to be remanded to BCBS for read ministration, and ordered BCBS to provide notice to the class at BCBS' sole expense.

On May 1, 2012, Plaintiffs filed the instant motion for attorney's fees and costs pursuant to § 502(g) of ERISA, Fed. R.Civ.P. 23(h) and 54(d)(2), L.R. 54.1 and 54.1.2, and 28 U.S.C. § 1920. The Court referred the motion to a United States Magistrate Judge. The magistrate judge conducted a hearing on October 23, 2013, and, in addition, to the original motion, response, and reply briefs, considered several subsequently filed "notices" of supplemental authority as well as response and reply briefs regarding those notices. On January 30, 2014, the magistrate judge issued a Report and Recommendation ("Report"), recommending that the motion be granted in part and reducing the amount of attorney's fees and costs requested by Plaintiffs.

BCBS has filed 11 timely objections challenging various aspects of the Report. Civil Rule 72 does not require the Court to hold a hearing when reviewing a magistrate judge's findings. Fed.R.Civ.P. 72; *U.S. v. Raddatz*, 447 U.S. 667, 674, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (holding 28 U.S.C. § 636 did not require a hearing for de novo review of a magistrate's findings); *see also Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, No. 09–14919, 2012 WL 1622897 (E.D.Mich. May 9, 2012). After examining the record and considering BCBS' objections de novo, the Court concludes that its objections do not have merit. Accordingly, the Court will adopt the Report, and grant the motion for attorney's fees and costs to the extent recommended by the Report.

### STANDARD OF REVIEW

Civil Rule 72 provides that a party's specific written objections to a magistrate judge's Report filed within fourteen days of service are entitled to de novo review. *See* Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

Section 502(g)(1) of ERISA provides, "In any action under this title ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Civil Rule 23(h) provides, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law" upon plaintiffs' motion under Civil Rule 54(d)(2). 28 U.S.C. § 1920 provides that the Court may tax as costs various expenses.

The Supreme Court has held that a claimant need not be a "prevailing party" to be eligible for attorney's fee under ERISA's fee-shifting statute, but rather, the Court may award fees and costs under the statute if the party requesting the award shows that he obtained "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 254, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). Nevertheless, "[e]ven under this more relaxed threshold for eligibility, [plaintiffs] must demonstrate [their] entitlement to attorney's fees." *Geiger v. Pfizer, Inc.,* 549 Fed.Appx. 335, 338 (6th Cir.2013). In exercising its discretion as to whether to award fees under § 1132(g), this Court is to consider the following five factors established by the Sixth Circuit in *Sec'y of Dep't of Labor v. King,* 775 F.2d 666 (6th Cir.1985):

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting the fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* at 669. "No single factor is determinative." *Moon v. Unum Provident Corp.,* 461 F.3d 639, 642–43 (6th Cir.2006).

## BACKGROUND

The Report first concludes that there is no question that Plaintiffs have achieved some success on the merits. Report & Recommendation Plaintiffs' Mot. for Attorney Fees; ("Report") 5, ECF No. 167. The Report notes that Plaintiffs were able to persuade the Court that the plan administrator's characterization of ABA therapy as "experimental or investigative" as applied to the claims of the class members is arbitrary and capricious and should not be upheld under ERISA. *Id.* at 5. The Report explained that the Court reversed the plan administrator's decision and ordered that the class members' claims for coverage of ABA therapy be remanded to BCBS for readministration consistent with the Opinion and Order. *Id.* The Report disagreed with BCBS' argument that an award of fees and costs is premature because the parties do not yet know the number of class members and how many are entitled to relief, explaining that courts within the Sixth Circuit have consistently held that a remand to the plan administrator constitutes a substantial success on the merits. *Id.* at 6.

The Report proceeds to analyze the *King* factors, noting that the parties did not dispute that the second and fourth factors were present. *Id.* at 6–7. The Report concludes that the Court's finding that BCBS' denial of benefits was arbitrary and capricious suggests that BCBS acted with culpability in denying benefits for ABA therapy. *Id.* at 7–10. The Report also finds that an imposition of attorney's fees and costs in the instant case will serve to deter other plan administrators from implementing internally inconsistent and ambiguous policies that are not properly supported by record evidence. *Id.* at

10. In addition, the Report determines that Plaintiffs' case has relatively more merit than BCBS' because Plaintiffs overcame the arbitrary and capricious standard of review. *Id.* at 11–12. Accordingly, the Report concludes that, based on the *King* factors, Plaintiffs are entitled to an award of attorney's fees and costs. *Id.* at 12.

Plaintiffs request fees in the amount of $829,561. *Id.* In determining reasonable hourly rates, the Report first notes that such a rate is calculated according to the prevailing market rates in the relevant community, which, in the case at bar, is the Eastern District of Michigan. *Id.* at 13–15. Mr. Mantese claims hourly rates of $500 and his partners claim rates of $400, which the Report points out are in the 95th percentile of prevailing market rates for attorneys with similar experience. *Id.* at 16. The Report also considers that the Michigan State Bar Survey shows that the 75th percentile hourly rate for a managing partner is $315, and is $350 for equity and non-equity partners. *Id.* at 17. The State Bar Survey shows that the 75th percentile hourly rate for attorneys with between 16 and 35 years of experience is $300 per hour and the 95th percentile rate is $425 to $450 per hour. *Id.* In addition, the Report notes that the 75th percentile hourly rate for attorneys practicing consumer law is $350 and is $300 for those practicing insurance law. *Id.* Considering those factors, the Report concludes that $425.00 is a reasonable attorney fee for hours submitted by Mr. Mantese and $350.00 per hour is a reasonable fee for his law partners. *Id.* at 16.

Mr. Conway, a sole practitioner, claims a rate of $400 per hour. *Id.* The Report considered that the 75th percentile hourly rate for sole practitioners is $250 and the 95th percentile rate is $350 according to the State Bar Survey, and that, for attorneys with his level of experience, 16 to 25 years, the 75th percentile hourly rate is $300 and the 95th percentile hourly rate is $450. *Id.* As a result, the Report finds that $350 per hour is a reasonable hourly rate for Mr. Conway. *Id.* at 17–18.

The associates claim a $310 hourly rate, regardless of experience level, which is at the 95th percentile. *Id.* at 18. The Report notes that Plaintiffs did not submit any information regarding their experience level or years in practice. *Id.* BCBS sought to reduce their rates to the average rate, which is $203 per hour, and the Report states that the 75th percentile rate is $228. *Id.* at 16. The Report suggests that $250 per hour is a reasonable rate for the associates. *Id.* at 18–19.

The Report then turns to assess the number of hours billed, which Plaintiffs assert is 2243.5. *Id.* at 19. The Report explains that the billing entries submitted by Plaintiffs contain numerous instances of block billing in which all work by a time keeper performed on a particular date is included without specifying how much time was allotted to each individual task. *Id.* at 24. In addition, the Report points out that the billing records contain numerous vague time entries, generally referring to tasks, meetings, or communications without any indication of their general subject matter, number, or other justification. *Id.* The Report determines that such time entries do not provide sufficient detail regarding the task performed. *Id.* at 24–25. In light of Plaintiffs' burden of production, the block billing, the vague entries, and insufficient documentation, the Report concludes that the total fee request be reduced by five percent. *Id.* at 25.

The Mantese Firm bills in quarter-hour increments and the Conway Firm bills in tenth of an hour increments. *Id.* at 25–26. BCBS asserted that the fees should be reduced because the larger billing increments likely led to overbilling in many

instances. *Id.* at 26. The Report concludes that the billing increments are not unreasonable and rejects BCBS' request for a reduction in fees. *Id.* at 27.

The Report next addresses BCBS' concerns about billing for administrative or noncompensable task and excessive and duplicative billing. *Id.* The Report points to two instances presented by BCBS in which the billing records show multiple attorneys engaged in the same tasks with no indication of the specific contribution each lawyer made beyond simply reviewing another attorney's work. *Id.* at 31. The magistrate judge also notes, that, based on his review of BCBS' spreadsheet of objections to the billing records, five attorneys billed approximately 27 hours working on Plaintiffs' response to a motion for reconsideration. *Id.* at 32. The Report concludes that attorney time billed for "telephone call for client" and attorney travel time is compensable, but attorney time for clerical tasks such as "file organization" and "proofread correspondence and filing" is not compensable and fees for such time should be excluded. *Id.* at 33. As a result, the Report recommends excluding the following time entries:

· 7/18/11—SRP—0.75 hours—Retrieved documents from Wayne Library

· 1/2/11—ZMK—1.0 hours—File organization for case

· 2/8/11—ZMK—2.0 hours—File organization for case

· 2/16/11—ZMK—2.0 hours—Continue and complete file organization

· 8/13/12—TMD—1.0 hours—Proofread correspondence and filing.

*Id.* at 33–34. The Report concludes that the time the attorneys spent on press releases was minimal and will not be excluded. *Id.* at 34. In addition, the Report concludes that the time entries in which (1) six attorneys billed more than 35 hours for

Plaintiffs' motion for summary judgment from July 18, 2011 to July 21, 2011, (2) five attorneys billed more than 27 hours for Plaintiffs' response to BCBS' motion for reconsideration from July 30, 2011 through August 2, 2011, and (3) billing more than 53 hours for preparation for a hearing from June 8, 2011 through June 23, 2011, all of which were identified in BCBS' spreadsheet of objections to Plaintiffs' billing records, are excessive and unreasonable, and, therefore, their amounts should be reduced by 25 percent. *Id.* at 34.

The Report declines to reduce the fee award because Plaintiffs achieved only "insignificant results," as urged by BCBS, because Plaintiffs did obtain a recovery for the class. *Id.* at 34–36. On the other hand, the Report rejects Plaintiffs' request for a fee enhancement, explaining that it is not necessary to enhance the fee because the lodestar calculation adequately compensates Plaintiffs for the risks inherent in this type of litigation and Plaintiffs have failed to establish that the case is rare or exceptional requiring an enhancement. *Id.* at 37.

The Report next considers Plaintiffs' request of $10,049.12 in costs. *Id.* at 38. The Report reviews decisions from other jurisdictions which support the view that costs under ERISA include nontaxable costs as long as they are reasonable out-of-pocket expenses incurred by the attorney that are normally charged to a fee-paying client in the course of providing legal services. *Id.* at 40. The magistrate judge states that, despite authority to the contrary, he is more persuaded by those courts that allow the recovery of costs in addition to those taxable under § 1920. *Id.* at 41. Therefore, the Report concludes that Plaintiffs' claimed telephone, postage, facsimile and travel costs should be allowed, but their claimed costs for meals and press releases should not be allowed

since Plaintiffs have not established that these costs would normally be charged to the fee-paying client *Id.* at 42.

The Report addresses BCBS' argument that the costs for copying charges in particular should be reduced because they are insufficiently detailed. *Id.* The Report notes that copying costs are taxable under § 1920(4) provided that they are necessarily obtained for use in the case. *Id.* at 43. The magistrate judge explains that, as a practical matter, it would be difficult to document for what purpose every photocopy made in the course of pursuing a lawsuit was used. *Id.* Nevertheless, recognizing that documentation was lacking to some degree as to the purpose of the copies, the Report recommends a ten percent reduction in the amount requested for copies. *Id.* at 44. The Report also reduces the copying costs to $0.10 per copy, which is considered a reasonable rate. *Id.*

Finally, the Report considers BCBS' challenge to the costs of computer research. *Id.* The magistrate judge believes that those judges who have awarded the costs of computerized research are in the majority and the reasons for doing so are well-founded. As a result, the Report recommends awards for such costs, which are reasonable given the length and complexity of the litigation. *Id.* at 45.

The Report requires Plaintiffs to recalculate the amount of attorneys's fees and costs sought in accordance with the Report and resubmit their adjusted final requests by February 20, 2014, a requirement with which Plaintiffs have since complied. *Id.* at 45–46.

## DISCUSSION

BCBS made 11 objections to the Report which will be addressed in turn.

### I. *Ripeness*

BCBS argues that it was error for the Report to find that an award of fees and costs is not premature because the most important factor in determining the amount of the fee award is the degree of the plaintiff's success. BCBS maintains that the final amount of class recovery is still unknown.

 "[A] fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)." *Hardt,* 560 U.S. at 255, 130 S.Ct. 2149 (internal quotation omitted). "A claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question of whether a particular party's success was substantial or occurred on a central issue." *Id.* (internal quotations omitted). In *Hardt,* the Supreme Court found that a court order remanding an ERISA claim for further consideration can constitute some success on the merits, although the Court expressly left open the issue of whether a remand order without more constitutes some success on the merits. *Id.* at 255–56, 130 S.Ct. 2149. But "[i]n the Sixth Circuit, a remand, alone, constitutes 'some success on the merits' that makes an award of attorney's fees and costs available under § 1132(g)(1)." *Thies v. Life Ins. Co. of N. Am.,* 839 F.Supp.2d 886, 890 (W.D.Ky. 2012).

 BCBS correctly notes that *Hardt* is different from the instant case because, there, the motion for attorney's fees was made after the plan administrator readministered the claims. "However, nothing in *Hardt* precludes an award of attorney's fees where a district court remands to the plan administrator . . . where the plan ad-

ministrator has not yet awarded benefits." *Blajei v. Sedgwick Claims Mgmt. Servs., Inc.,* 09–cv–13232, 2010 WL 3855239, at *4 (E.D.Mich. Sept. 28, 2010). Accordingly, "it is appropriate to rule on Plaintiff's Motion for Attorney's Fees even though Plaintiff has presently only secured a remand to the Plan Administrator." *Id.* Thus, BCBS' objection on this ground will be overruled.[1]

## II. *Hourly Rates*

BCBS next argues that the Report recommends billing rates that are excessive and without justification. In particular, BCBS contends that the Report does not explain why the rates for all the attorneys have been determined to be so high.

 "The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004). The "lodestar" method is the "proper method for determining the amount of reasonable attorney's fees." *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir.1995) (internal citations omitted). This approach involves two steps. First, the court calculates the "lodestar" by multiplying "the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Second, the court "may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Adcock–Ladd v. Sec'y of Treasury,* 227 F.3d 343, 349 (6th Cir.2000).

 A reasonable hourly rate is generally calculated according to the "prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "The 'prevailing market rate' is that rate which lawyers of comparable skill and experience can expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area where he maintains his office...." *Adcock–Ladd,* 227 F.3d at 350. "The appropriate rate ... is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co.,* 510 F.3d 610, 618 (6th Cir.2007). BCBS does not dispute that the relevant community is the Eastern District of Michigan.

 Prevailing attorneys must justify the reasonableness of a requested fee award. *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. 1541. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*

---

1. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a case involving determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1983, on which Plaintiffs rely for the proposition that the inquiry regarding the extent of success and the amount of the fee award

"does not end with a finding that the plaintiff obtained significant relief," *id.* at 440, 103 S.Ct. 1933, is not applicable to the threshold determination of finding some degree of success on the merits for an award of attorney's fees under § 1132(g).

The Magistrate Judge concludes that $425 per hour is a reasonable rate for Mr. Mantese. BCBS asserts that the magistrate judge disregards the State Bar Survey figures and governing law because he awards Mr. Mantese a rate at the 95th percentile of that survey. BCBS further states that the magistrate judge does not explain why the 75th percentile rate is insufficient. Nonetheless, as Plaintiffs explain, such a high rate for lead counsel is warranted by Mr. Mantese's qualifications and experience. Courts in the Eastern District of Michigan have recently awarded rates as high as $475 per hour for lead and experienced class counsel in ERISA health benefit class actions. *See Hargrove v. Eaglepicher Corp.,* No. 10–cv–10946, 2012 WL 1668152, at *7 (E.D.Mich. May 10, 2012) (collecting cases). BCBS also contests awarding a higher rate to Mr. Mantese than to the other partners at his firm. That rate, however, is justified by Mr. Mantese's experience and because he is lead counsel.

BCBS argues that Mr. Mantese's law partners are not entitled to the 75th percentile rate of $350 per hour. BCBS contends that Plaintiffs provided no evidence to justify their claimed billing rates, and, accordingly, they should receive at most, $282 per hour, which is the average rate for equity partners. The Report acknowledges that Plaintiffs did not provide information regarding their experience. Nevertheless, the award is supported by the complexity of the case and the Mantese firm's experience in handling matters of this sort.

BCBS asserts that the Report fails to explain why Mr. Conway is entitled to $350 per hour and urges that $300 per hour is a more than adequate rate. Again, the rate is adequately supported by the nature of the case as well as by Mr. Conway's experience.

BCBS contends that the Report fails to explain its recommended rate of $250 per hour for all of Mr. Mantese's associates. As the Report notes, Plaintiffs did not present the magistrate judge with information about their individual experience levels even though they had the opportunity to do so. Still, the rate, which is above the 75th percentile rate for associates, is justified by the firm's experience in this type of case and the difficulty of the case itself.

III. *Consideration of BCBS' Spreadsheet and Supplemental Attorney's Fees*

BCBS points to the Report's statement that "BCBS asserts that $113,802.50 of the Mantese Firm attorney's fees (through September 2011) and $187,994.00 of the Conway Firm attorney's fees, or a total of $301,796.50, should not be allowed for the reasons stated in their response." Report 20. BCBS notes that the Report fails to mention that, after Plaintiffs submitted an additional one and a half years of billing records for the Mantese Firm, BCBS submitted a revised spreadsheet, demonstrating that at least $641,269.00 should not be allowed. Although the Report may have misstated the exact amount of fees that BCBS challenged, the magistrate judge is clearly well-versed in BCBS' legal position. In light of the entire record, including the spreadsheet that BCBS contends was not reviewed, the magistrate judge's decision is appropriate.

BCBS also criticizes the Report's order that Plaintiffs submit an updated fee demand figure, with which Plaintiffs have already complied pending the Court's ruling on the Report and Recommendation. BCBS contends that these additional submissions are inappropriate and prejudicial. Nevertheless, "[s]upplemental attorneys' fees can be awarded in the same manner as attorneys' fees." *McCombs v. Meijer*

*Inc.*, 395 F.3d 346, 361 (6th Cir.2005). "This Court also retains jurisdiction over any additional fee petitions in otherwise obtaining or defending the judgment." *Int'l Union, United Auto., Aerospace, & Agricultural Implement Workers of Am. v. Ford Motor Co.*, No. 05–74730, 2007 WL 4571648, at *1 (E.D.Mich. Dec. 27, 2007). Accordingly, Plaintiffs may make new, supplemental motions for attorney's fees.

BCBS seeks an opportunity to object to the adjusted fee and cost figure and to any records Plaintiffs will submit. BCBS envisions objecting to the updated fee demand that will be considered by the magistrate judge. This Court sees the possibility that this will lead to an endless dispute regarding attorney's fees that will lead Plaintiffs to continue to generate fees that BCBS will challenge. Upon the entry of this order, therefore, the magistrate judge will merely consider and calculate the award of attorney's fees based on this order. BCBS will make no more new filings with the magistrate judge, but it will have the opportunity to file objections to the order before a final award is approved by this Court.

### IV. *Vague and Block Billed Entries*

The Report imposes a 5 percent reduction for numerous entries of block billing and those with vague time periods in the record. Plaintiffs argue that because the Report cites cases that imposed a 10 percent reduction for similar deficiencies, the reduction should be increased to at least 10 percent.

"When confronted with a request for the award of attorney's fees in the face of inadequate billing records, courts in the Sixth Circuit often apply across-the-board fee reductions." *Grant v. Shaw Envtl., Inc.*, No. 08–cv–350, 2013 WL 1305599, at *7 (E.D.Tenn. June 12, 2013). BCBS puts forth no case that requires the reduction to

be 10 percent or greater. The Report properly notes the magistrate judge's discretion in determining the amount of the reduction. The Report also describes the vague and block billed entries it opposes in great detail. The Court agrees that the reduction is reasonable based on the records presented by Plaintiffs and will deny BCBS' objection.

### V. *Time Increments*

The Report accepts the Mantese Firm's billing in quarter-hour increments and the Conway Firm's billing in tenth of an hour increments, determining that quarter-hour increments are not unreasonable in the instant case. BCBS objects that all time should be reduced to tenth of an hour increments because the Report has given no basis for its decision and the time records demonstrate that the reduction is required.

"Whether quarter-hour billing is reasonable is a matter within the discretion of the district court." *Yellowbook, Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir.2013). Some district courts do not reduce the requested fee awards when it is the regular practice of the law firm to bill in quarter-hour increments. *See Does I, II, III v. Dist. of Columbia*, 448 F.Supp.2d 137, 142 (D.D.C.2006) (collecting cases). "It would be inappropriate judicial micromanagement to mandate billing practices by reducing a private firm's properly and adequately documented attorney's fees from the standard billing increment employed by the firm." *Causeway Med. Suite v. Foster*, No. 99–509, 2000 WL 533515, at *3 (E.D.La. May 2, 2000). Accordingly, it is reasonable to accept the Mantese Firm's regular practice of billing in quarter-hours.

BCBS provides no more than speculation that the Mantese Firm records con-

tain numerous instances of recording a quarter-hour for task that likely took a few minutes. The same is true of BCBS' criticism that Mr. Conway never recorded less than 0.3 hours for any task.

BCBS asks that the Court perform the calculation that the district court performed in *Yellow Book USA Inc. v. Brandeberry*, No. 10–cv–025, 2013 WL 2319142 (S.D.Oh. May 28, 2013),[2] whereby the court arrived at a 5 percent reduction after adding the number of time entries, multiplying that number by 9, which constitutes the difference in minutes between a quarter-hour increment and a tenth-hour increment, and then calculating the percentage of total hours billed. *Id.* at *8. The Court declines to make such a calculation because it finds that the quarter-hour billing is reasonable.

Thus, BCBS' objection regarding quarter-hour billing is denied.

## VI. *Reductions for Excessive Billing and Overstaffing*

■ The Report concludes that the time entries in which (1) six attorneys billed more than 35 hours for Plaintiffs' motion for summary judgment from July 18, 2011 to July 21, 2011, (2) five attorneys billed more than 27 hours for Plaintiffs' response to BCBS' motion for reconsideration from July 30, 2011 through August 2, 2011, and (3) attorneys billed more than 53 hours for preparation for a hearing from June 8, 2011 through June 23, 2011, all of which were identified in BCBS' spreadsheet of objections to Plaintiffs' billing records, are excessive and unreasonable, and, therefore, their amounts should be reduced by 25 percent. Report at 34.

BCBS argues that the Report erroneously relies only on examples of overbilled tasks that were made for illustrative purposes in its briefing because of space constraints and should have scrutinized the time records more rigorously. BCBS also contends that Report should have analyzed its request that time billed for discovery be disallowed before rejecting it. The Report and a review of the record indicate that the magistrate judge has carefully considered all arguments regarding the allegations of overbilling. The Report simply reflects that the magistrate judge does not find BCBS' arguments persuasive rather than that he failed to rigorously scrutinize the record. The Court agrees that the reduction as made by the magistrate is reasonable.

BCBS also argues that the record shows an "inference that plaintiff's counsel improperly recorded the case time actually spent on task for one or more [ ] other cases." Objections 13. This argument, based on similar dates and amounts of time billed to other similar cases litigated by Plaintiffs' counsel, is speculative in light of Plaintiffs' reasonable argument that similar tasks can be done on similar pending cases on the same day to increase efficiency.

In addition, BCBS contends that it is disingenuous that counsel spent hours researching issues on which they were supposedly experts. Nevertheless, the instant case is a complex ERISA class action. "This argument seems to suggest that great attorneys do not have to work hard. In the Court's experience, the exact opposite is true. Most great attorneys realize that to achieve a goal, much hard work and toil is necessary, especially when entering uncharted legal territory." *Cmtys. for Eq-*

---

**2.** The Sixth Circuit remanded *Yellowbook* to the district court for a partial grant of fees after it reversed the district court's refusal to

grant any attorney's fees. *Yellowbook,* 708 F.3d at 841.

*uity v. Michigan High School Athletic Ass'n,* No. 98–cv–479, 2008 WL 906031, at *15 (W.D.Mich. Mar. 31, 2008). "Had less-experienced counsel handled this case, it would have greatly increased the number of hours that would have been billed." *Id.* at 14. BCBS' "suggestion that this case could have been litigated as successfully had it been less well staffed bears little relation to how extensively this case was actually litigated." *Rodriguez ex rel. Kelly v. McLoughlin,* 84 F.Supp.2d 417, 425 (S.D.N.Y.1999).

Finally, BCBS argues that the 25 percent reduction for each task, rather than a global reduction in fees or a determination of a reasonable amount of time for each specific task, is arbitrary and inadequate. Although BCBS points to district courts that have taken each of the proposed routes, it has not presented any authority that the magistrate judge's decision here is improper or outside of his discretion. Thus, because the Court finds that the magistrate judge's conclusions regarding overbilling are reasonable, they will be adopted.

## VII. *Non–Compensable Tasks*

The Report concludes that attorney time billed for "telephone call for client" and attorney travel time is compensable, but attorney time for clerical tasks such as "file organization" and "proofread correspondence and filing" is not compensable and that fees for such time should be excluded. Report at 33. As a result, the Report recommends excluding the time entries labeled "Retrieved documents from Wayne Library," "File organization for case," "Continue and complete file organization," and "Proofread correspondence and filing." *Id.* at 33–4. The Report also concludes that the time the attorneys spent on press releases was minimal and will not be excluded. *Id.* at 34. BCBS

objects that the attorney travel time and time spent on press releases should not be recoverable.

"[T]ravel time is ordinarily billable and therefore appropriately included in an award of attorney's fees ... 'when the requested time is reasonable.'" *Caudill v. Sears Transition Pay Plan,* No. 06–cv–12866, 2011 WL 1595044, at *15 (E.D.Mich. April 26, 2011) (quoting *Smith v. Columbia Gas of Ohio Grp. Med. Benefit Plan,* No. 06–cv–00708, 2010 WL 319953, at *8 (S.D.Ohio Jan. 20, 2010)). BCBS challenges time Mr. Conway billed to travel to and from Lansing to attend a Michigan State Senate hearing on bills related to mandated coverage for the treatment of autism. BCBS contends that the attendance was not necessary to the case, having BCBS pay for travel from metropolitan Detroit to Lansing is unreasonable, and there is no justification for the amount of time spent. Plaintiffs have explained that the purpose of the travel was reasonable because BCBS moved for decertification of the class as moot based on the proposed legislation. The Court finds that reasonable travel time has been requested, particularly as Plaintiffs note that they have reduced the requested time to four hours in their adjusted request made in response to the Report.

"Some courts have found fees related to press relations reimbursable to the extent the hours expended 'were reasonably necessary for the proper prosecution of the lawsuit,'" meaning "only those discussions with the press that contributed to communication with the class in a *meaningful* way and were necessary for the prosecution of the suit." *Gratz v. Bollinger,* 353 F.Supp.2d 929, 941 (E.D.Mich.2005) (quoting *Keyes v. Sch. Dist. No. 1, Denver, Colorado,* 439 F.Supp. 393, 408 (D.Colo. 1977)). Plaintiffs have made such a showing in their fee request, which justifies the

magistrate judge's decision to award fees on this basis. Nevertheless, BCBS is no longer aggrieved by this particular fee request since Plaintiffs' counsel voluntarily excluded all fees incurred on press releases and media relations in their adjusted request made in response to the Report.

Therefore, the Court will deny BCBS' objection regarding non-compensable tasks.

## VIII. *Other Bases for Reductions*

BCBS objects that the Report did not thoroughly consider the two detailed spreadsheets it submitted describing each improper time entry. BCBS contends that it was improper for the Report to refuse to deduct time when Plaintiffs did not specifically explain why each of the challenged time entries were reasonable. BCBS, however, does not go into detail to explain why each of the entries is unreasonable except for the conclusory statements in the spreadsheets, such as "Excessive." As discussed above, having considered the entire record, the Court finds that the fee awarded by the magistrate judge is reasonable.

█ In its objection brief, BCBS provides detail about only one more allegedly overlooked argument: that the request of 176.8 hours for the fee motion is excessive. BCBS relies on the general rule the Sixth Circuit set forth in *Coulter v. State of Tennessee*, 805 F.2d 146 (6th Cir.1986), whereby "[i]n the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial." *Id.* at 151. BCBS claims that the total request at bar constitutes more than eight percent of the total fees and should be limited to three percent.

█ In *Klein v. Cent. States, Southeast and Southwest Areas Health & Welfare Plan*, 621 F.Supp.2d 537 (N.D.Ohio 2009), the district court found that ERISA claims present unusual circumstances that make *Coulter* inapplicable. *Id.* at 544–45. The court reasoned that the limitation should not apply to cases in which most of an attorney's work occurs in administrative proceedings before the case reaches the district court, which disadvantages plaintiffs' counsel. *Id.* Accordingly, the refusal to limit percentage of time devoted to the fee request to three percent of the total is not unreasonable. It also cannot be understated how vigorous BCBS' challenge to the fee award has been, which is made obvious by the extensive briefing before the magistrate judge, the numerous objections to the Report, and, indeed, the length of this order adopting the Report. "It is reasonable to expect that Plaintiff's counsel would have to spend more than the normally anticipated amount of time to respond to this lengthy, broad-based attack on the request for [ ] fees." *Lee v. Javitch, Block & Rathbone, LLP*, 568 F.Supp.2d 870, 874 (S.D.Ohio 2008). Accordingly, BCBS' objection is denied.

## IX. *Insignificant Results*

█ BCBS argues that Plaintiffs' fee award should be reduced because it contends that Plaintiffs achieved only "insignificant results." As the Report explains, the results in this case are not insignificant. The Court declared BCBS' policy arbitrary and capricious and ordered Plaintiffs' claims to be remanded to BCBS for redetermination, which is actual relief on the merits for Plaintiffs. Plaintiffs also note that, a little more than two weeks after Judgement was entered in this case, BCBS reversed its longstanding policy that ABA was experimental and issued a new policy statement taking the position

that the effectiveness of ABA therapy has been established.

BCBS contends that success was limited because the Court decertified the majority of Plaintiffs' class. The entire class, however, was not decertified and the remaining class members received the result of redetermination. As discussed in Section I *infra*, attorney's fees may be awarded when there is some success on the merits. As a result, BCBS is incorrect in stating that the magistrate judge erred when he relied on *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) for the proposition that a Plaintiff prevails "when the actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12, 113 S.Ct. 566.

The reasoning set forth on this issue in *Heath v. Metro. Life Ins. Co.*, No. 09–cv–0138, 2011 WL 4005409 (M.D.Tenn. Sept. 8, 2011) is directly applicable to the instant case: "It would seem absurd to classify the [ ] decision to remand the case back to Defendant for further review as 'limited success' in this situation.... It cannot be that an inadequate review that produces an insufficient basis for a benefits decision by the insurer or the court can result in a fee reduction due to the plaintiff's limited success in court." *Id.* at *11. *See Cockrell v. Hartford Life & Accident Ins. Co.*, No. 11–2149, 2013 WL 2147454, at *7 (W.D.Tenn. May 15, 2013) ("Although this Court did not grant Cockrell's request for disability benefits, it did find that Hartford's denial of benefits was arbitrary and capricious.... Hartford may not benefit from a reduction in attorney's fee award when it was Hartford's inadequate and cursory review that prompted this litigation. Cockrell, like the plaintiff in *Heath*, has achieved a level of success in security

a remand of her case that entitles her to an undiluted award of attorney's fees.").

Furthermore, BCBS' statement that class recovery in the case will likely benefit seven people at the amount of $200,000 is speculative. All the members of the potential class, which consists of 120 members, benefitted by having their claims remanded whether or not BCBS determines they are entitled to benefits after readministration.

The fact that the class size certified is smaller than the class size plaintiffs originally sought is of no moment since Plaintiffs were successful. *See Caudill*, 2011 WL 1595044, at *16. Again, BCBS' attempts to distinguish *Caudill* from the instant case because it involved a $2.6 million money judgment for which the amount of attorney's fees was a fraction is flawed because it is based on a speculative and self-serving characterization of the monetary amount of benefits it may ultimately disperse to class members. BCBS' request that the fee award should be limited to the 1/3 typical percentage fee in private contingency arrangements has no basis in law or logic when applied to the rationale of the ERISA fee-shifting statute. Moreover, it is of no consequence that the Court approved a negotiated settlement of a much lower amount between Plaintiff's counsel and BCBS in an earlier case involving similar claims. *See Johns v. Blue Cross Blue Shield of Michigan*, No. 08–cv–12272 (E.D.Mich.).

BCBS also claims that any hours spent opposing BCBS' post-judgment proposed letter to the potential class members should be disallowed because BCBS prevailed on that motion and that Plaintiffs should not be able to recover any time for compiling the proposed administrative record which the Court ultimately struck. Nonetheless, "the standard is whether a reasonable attorney would have believed

the work to be reasonably expended in the pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir.1990). Plaintiffs have met the standard and their fee request is appropriate. As a result, the Court will deny BCBS' objection.

## X. *Awarding Costs*

BCBS challenges the Report's recommendation to award Plaintiffs costs in addition to those listed in 28 U.S.C. § 1920, which enumerates the type of costs that a judge or clerk of any court may tax, arguing that it is not possible to do so.

 As with attorney's fees, the Court has broad discretion to award costs to parties in ERISA action who have shown some degree of success on the merits. *See* 29 U.S.C. § 1132(g)(1) (providing that the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party."). Civil Rule 54(d)(1) provides that "unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R.Civ.P. 54(d)(1). Furthermore, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" upon motion under Civil Rule 54(d)(2), subject to Civil Rule 23(h) procedures. Fed.R.Civ.P. 23(h). ERISA is silent on those costs other than attorney's fees that the Court may tax under the authority of Civil Rule 54(d).

BCBS is correct that some district courts in the Sixth Circuit have not permitted recovery for costs that are not allowed by § 1920, although the Sixth Cir-

cuit itself has not ruled on the issue.[3] *See Elec. Energy, Inc. v. Lambert*, No. 10–2629, 2011 WL 1883986, at *6 (W.D.Tenn. May 17, 2011); *Hall v. Ohio Educ. Ass'n*, 984 F.Supp. 1144, 1145 (S.D.Ohio 1997). The Report properly relies on decisions by other district courts in the Sixth Circuit that have awarded such costs. Notably, the district court awarded such costs in *Thies v. Life Ins. Co. of North Am.*, 839 F.Supp.2d 886 (W.D.Ky.2012), determining, "The Defendant's arguments against costs are not persuasive because it has not pointed to any authority that would lead the Court to find that the express language of 29 U.S.C. § 1132(g)(1), which allows the recovery of costs in the Court's discretion, is limited by 28 U.S.C. § 1920." *Id.* at 896. *See also Moore v. Menasha Corp.*, No. 08–cv–1167, 2013 WL 308960, at *5–*6 (W.D.Mich. Jan. 25, 2013) (ERISA action awarding, without explanation of costs allowed under § 1920, costs for computerized research, telephone, and other expenses not allowed under § 1920); *Hargrove*, 2012 WL 1668152, at *2; *Int'l Union*, 2007 WL 4571648, at *1 ("Class counsel are entitled to fees and nontaxable costs pursuant to ERISA for their work since July 31, 2006.").

 The Court agrees with the magistrate judge's reasoning and that of the courts cited above that the award of costs is appropriate. Thus, BCBS' objection is denied.

## XI. *Reduction in Costs*

 BCBS' final objection is that the recommended reduction of 10 percent in the request for copying costs should be increased to 80% because, in *Moore*, 2013

**3.** BCBS is right that the Sixth Circuit has held that district courts may not award costs not authorized by the statute and did not allow such recovery in a civil rights case pursuant to 42 U.S.C. § 1988. *King v. Gowdy*, 268 Fed.Appx. 389, 391 (6th Cir.2008). It has never made such a determination, however, in an ERISA case.

WL 308960, the Court made such a reduction when "Plaintiffs provide[d] no detail whatsoever as to what the[ ] reproduciton costs entailed." *Id.* at *5. Nevertheless, the recommended 10 percent reduction is reasonable. The Report explains that, as a practical matter it would be difficult to document for what purpose every photocopy made in the course of pursuing a lawsuit of this nature was used. As a result, Plaintiffs need not be punished for failing to document the purpose for the thousands of photocopies they made. Even so, a 10 percent reduction is reasonable for the instances, such as those identified in the Report, in which Plaintiffs made a significant number of copies in a short time period and did not record their purpose. Accordingly, the objection is denied.

## CONCLUSION

The magistrate judge has properly determined that an award of fees and costs is not premature. The hourly rates recommended by the Report are all reasonable. In light of the entire record, including the spreadsheet that BCBS contends was not reviewed, the magistrate judge's decision is appropriate regarding hours. The 5 percent reduction for numerous entries of block billing and numerous vague time entries in the record is reasonable. The Report appropriately accepts both the Mantese Firm's and the Conway Firm's billing increments. The magistrate judge has made a reasonable determination regarding reductions for excessive billing. Both the travel time and fees related to press relations are compensable, and there is no longer a dispute regarding the press relations fees since Plaintiffs have voluntarily withdrawn that request. BCBS' objection that the magistrate judge overlooked its other arguments is baseless.

Furthermore, there is no basis to reduce the fee award for "insignificant results" because the class members benefitted from readministration of their claims even though Plaintiffs did not succeed in certifying the entire class they put forward.

Moreover, the decision to award costs is appropriate. In addition, the 10 percent reduction in reduction for costs related to copying is reasonable.

Therefore, the Court will adopt the Report as a whole and deny all of BCBS' objections. The Court accepts the recommendation that the magistrate judge will recommend a final award based on the adjusted final request that Plaintiffs have already submitted. (*See* ECF no. 176). Once the magistrate judge recommends an award, BCBS may object to the recommendation. To avoid the endless cycle of challenges to fee awards alluded to above, Plaintiffs must file any additional requests for attorney's fees covering a period beyond that discussed in the Report by motions for supplemental requests which the Court will address separately from this initial award.

## ORDER

**WHEREFORE,** it is hereby **OR-DERED** that BCBS' objection (document no. 171) is **OVERRULED** and the magistrate judge's Report (document no. 167) is **ADOPTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' motion for attorney's fees and costs (document no. 128) is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

**IT IS FURTHER ORDERED** that the matter is referred to the magistrate judge to recommend a fee award consistent with this order.

**IT IS FURTHER ORDERED** that Plaintiffs must file any additional requests for attorney's fees covering a period beyond that discussed in the Report by sepa-

rate motions for supplemental requests for attorney's fees and costs.

**SO ORDERED.**

*REPORT AND RECOMMENDATION PLAINTIFFS' MOTION FOR ATTORNEY FEES (Dkt. 128)*

MICHAEL HLUCHANIUK, United States Magistrate Judge.

## I. PROCEDURAL HISTORY

Plaintiffs filed this putative class action on December 16, 2010, seeking benefits they were allegedly denied for Applied Behavior Analysis ("ABA") therapy for autism, as well as declaratory and injunctive relief. (Dkt. 1). The Court subsequently certified a class of individuals enrolled in or covered by a plan offered or administered by defendant Blue Cross Blue Shield of Michigan ("BCBS") and governed by ERISA who were denied a claim for ABA therapy on the grounds that, pursuant to BCBS's 2010 Medical Policy, BCBS deemed the treatment to be "experimental." (Dkt. 35, 60, 124). On March 30, 2013, 2013 WL 4413310, the Court entered judgment against BCBS and in favor of plaintiffs, declared that BCBS's characterization of ABA therapy as "experimental or investigative," as applied to the claims of the class members, was and is arbitrary and capricious, overturned all denials of benefits on that basis, ordered that the class members' claims for coverage of ABA therapy be remanded to BCBS for re-administration, and ordered BCBS to provide notice to the class at BCBS's sole expense. (Dkt. 125, 126).

On May 1, 2013, plaintiffs filed the instant motion for attorney's fees and costs pursuant to § 502(g)(1) of ERISA, Fed. R.Civ.P. 23(h) and 54(d)(2), L.R. 54.1 and 54.1.2, and 28 U.S.C. § 1920. (Dkt. 128). BCBS filed a response in opposition to plaintiffs' motion on May 20, 2013. (Dkt. 130). Plaintiffs filed a reply brief on June 6, 2013 (Dkt. 136), and BCBS filed a sur-reply brief on October 15, 2013. (Dkt. 148). The parties filed separate "Joint" Statements of Resolved and Unresolved Issues on October 16, 2013. (Dkt. 150, 151). Pursuant to notice, a hearing was held before the undersigned on October 23, 2013 (Dkt. 141), and plaintiffs' motion was taken under advisement. The parties subsequently filed several "notices" of supplemental authority, as well as response and reply briefs regarding those notices. (Dkt. 160–66). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiffs' motion for attorney's fees and costs be **GRANTED in part,** as set forth below.

## II. ANALYSIS AND CONCLUSIONS

**A. Plaintiff Has Established the Requisite Degree of Success on the Merits to Warrant an Award of Attorney Fees and Costs under Section 502(g)(1) of ERISA**

### 1. Legal standard

Section 502(g)(1) of ERISA provides: "In any action under this title ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1); *see also* Fed.R.Civ.P. 23(h) (court may award fees and nontaxable costs in a certified class action). The United States Supreme Court has held that a claimant need not be a "prevailing party" to be eligible for attorney's fees under ERISA's fee-shifting statute; rather, the court may award fees and costs under the statute if the party requesting the award shows he or she obtained "some degree. of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 254, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). The Court ex-

plained that "[a] claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." *Id.* at 255, 130 S.Ct. 2149. The *Hardt* Court determined that, based on the facts of that case, the plaintiff's success in persuading the court to remand the plan administrator's decision was "far more than" a trivial success on the merits or purely procedural victory. *Id.* Similarly, "[i]n the Sixth Circuit, a remand, alone, constitutes 'some success on the merits' that makes an award of attorney's fees and costs available under § 1132(g)(1)." *Thies v. Life Ins. Co. of N. Am.*, 839 F.Supp.2d 886, 890 (W.D.Ky.2012) (citing *McKay v. Reliance Standard Life Ins. Co.*, 428 Fed.Appx. 537, 547 (6th Cir.2011) and collecting cases); *see also Blajei v. Sedgwick Claims Mgmt. Servs., Inc.*, 2010 WL 3855239, at *4 (E.D.Mich. Sept. 28, 2010) ("conclud[ing] that it is appropriate to rule on Plaintiff's Motion for Attorney Fees even though Plaintiff has presently only secured a remand to the Plan Administrator.").

However, "[e]ven under this more relaxed threshold for eligibility, [plaintiffs] must demonstrate [their] entitlement to attorney's fees." *Geiger v. Pfizer, Inc.*, 549 Fed.Appx. 335, 338 (6th Cir.2013) (citing *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 936 (6th Cir.1996) ("[O]ur circuit recognizes no presumption as to whether attorney's fees will be awarded" to the prevailing party in an ERISA action)). In exercising its discretion as to whether to award fees under § 1132(g), this Court is to consider the five factors established by the Sixth Circuit in *Secretary of Department of Labor v. King*, 775 F.2d 666 (6th Cir.1985):

(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* at 669. These *King* factors are not statutory and thus should be viewed flexibly, *see id.*, and "[n]o single factor is determinative." *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642–43 (6th Cir.2006).

## 2. Threshold determination

First, there can be no question under *Hardt* and Sixth Circuit precedent that plaintiffs have achieved "some success on the merits." Plaintiffs were able to persuade the Court that the plan administrator's characterization of ABA therapy as "experimental or investigative," as applied to the claims of the class members, was and is arbitrary and capricious and that it should not be upheld under ERISA. The Court reversed the plan administrator's decision and ordered that the class members' claims for coverage of ABA therapy be remanded to BCBS for re-administration consistent with the Court's Opinion and Order. The Court stated that plaintiffs' claims for coverage were payable, other than those claims denied for other "specific valid reasons, plainly having nothing to do with the experimental/investigative exclusion," such as claims denied because they are time-barred. (Dkt. 125). The undersigned disagrees with BCBS's assertion, raised for the first time in its sur-reply brief, that an award of fees and costs is premature because the parties do not know the number of class members

and how many of those members are entitled to relief. As explained above, courts within the Sixth Circuit have consistently held that a remand to the plan administrator constitutes a substantial success on the merits. *See, e.g., Thies,* 839 F.Supp.2d at 890 (W.D.Ky.2012); *Blajei,* 2010 WL 3855239, at *4 (collecting cases holding that a remand alone constitutes a substantial level of success on the merits). Thus, under *Hardt* and *McKay,* plaintiffs have satisfied the threshold requirement of achieving "some degree of success," which allows the Court to exercise its discretion in ruling on plaintiffs' request for attorney fees.

### 3. The five *King* factors

Once a court determines that attorney's fees are available because a party has achieved "some degree of success on the merits," the court looks to the five *King* factors to help determine whether or not to award fees. *See Ciaramitaro v. Unum Life Ins. Co. of Am.,* 521 Fed.Appx. 430, 437 (6th Cir.2013) ("[W]hile the five-factor *King* test is not required [after *Hardt*], it still has vitality in helping courts determine whether or not to award fees to a party that achieves some degree of success on the merits.") (citations omitted). Plaintiffs argue that they meet all five of the *King* factors. Defendant BCBS disputes that plaintiffs satisfy the first, third and fifth factors, and asserts that plaintiffs' motion for attorney's fees should be denied.[1]

The first *King* factor is the degree of culpability or bad faith of the opposing party. Plaintiffs argue that BCBS's reliance on and defense of its unsupported policy on ABA therapy reflects both culpability and a self-serving, deliberate attempt to avoid paying for effective ABA therapy to its plan participants. Plaintiffs assert that the Court has held that BCBS's policy was "internally inconsistent, ambiguous, and, most fatally, not supported by the evidence in the record." (Dkt. 125, p. 18). BCBS responds that an arbitrary and capricious denial of benefits does not necessarily indicate culpability or bad faith. BCBS asserts that its 2010 Medical Policy Statement was the result of critical review, and although the Court disagreed with the conclusion in the 2010 Statement, nowhere in its opinion did this Court hold that BCBS acted in bad faith.

In remanding the benefits determination to BCBS, this Court determined that BCBS's denial of benefits was arbitrary and capricious. The undersigned notes that BCBS correctly states that "an arbitrary and capricious denial of benefits does not necessarily indicate culpability or bad faith." *Heffernan v. UNUM Life Ins. Co. of Am.,* 101 Fed.Appx. 99, 109 (6th Cir. 2004). However, as the Sixth Circuit subsequently explained in *Gaeth v. Hartford Life Insurance Company,* 538 F.3d 524 (6th Cir.2008), "the court's case law by no means *precludes* a finding of culpability or bad faith based only on the evidence that supported a district court's arbitrary-and-capricious determination." *Id.* at 530 (emphasis in original, citing *Moon,* 461 F.3d at 644–45 (finding that the plan administrator was culpable for the same reason that its rejection of a disability claim was arbitrary and capricious—that is, it adopted wholesale the opinion of a physician in its employ "who based his findings on selective

---

1. BCBS does not dispute the remaining two *King* factors—(2) BCBS's ability to satisfy the award and (4) the existence of a common benefit or resolution of a significant ERISA legal question—and the undersigned suggests that these factors favor an award of attorney's fees and costs to plaintiffs. BCBS concedes that it has the ability to satisfy the award, and plaintiffs sought and obtained a benefit to a class of participants for coverage for ABA therapy under the 2010 Statement.

information in the administrative record and did not examine [the claimant]")). Moreover, it is unnecessary to find bad faith to conclude that this factor favors an award of attorney's fees. "Rather, if a plan administrator's conduct is "culpable", i.e., blameworthy, this factor favors an award of fees." *Blajei,* 2010 WL 3855239, at *5 (citations omitted). In finding that BCBS's denial of benefits was arbitrary and capricious, the Court noted that: (1) BCBS's 2010 Medical Policy concedes that ABA therapy is "safe," (2) the clinical studies cited in BCBS's policy statement overwhelmingly conclude that ABA is "effective" and make no distinction between types of autism spectrum disorder, contrary to the assertions in the policy statement, (3) BCBS's obligation to pay approved claims itself (in plans administered and funded by BCBS) shows that it is subject to a conflict of interest, and (4) "BCBS's medical policy is internally inconsistent, ambiguous, and, most fatally, not supported by the evidence in the record." (Dkt. 125). In light of these findings, the undersigned suggests that BCBS acted with culpability in denying benefits for ABA therapy. *See McKay,* 428 Fed.Appx. at 546 (affirming district court's determination that the defendant's "failure to conduct a 'full and fair investigation' into [the plaintiff's] claims, including its failure to consider the correct policy, amounted to arbitrary and capricious conduct that rose to the level of culpability required for a fee award" such that the first factor weighed heavily in the plaintiff's failure); *Shelby Cnty. Health Care Corp. v. Majestic Star Casino, LLC Gp. Health Benefit Plan,* 581 F.3d 355, 377 (6th Cir.2009) ("Where a plan administrator engages in an inadequate review of the beneficiary's claim or otherwise acted improperly in denying benefit, [courts] have found that attorney fees are appropriate."); *Heffernan,* 101 Fed.Appx. at 109 ("UNUM ignored overwhelming evidence ... and, instead denied [the] claim based on a theory that lacked legitimate foundation. UNUM then sought to defend this theory with reference to isolated snippets from the record.... [T]he lower court did not abuse its discretion by awarding the plaintiff her attorney's fees and costs."); *Potter v. SABIC Innovative Plastics US, LLC,* 2011 WL 4852334, at *5 (S.D.Ohio Oct. 13, 2011) ("Defendant was culpable for making a benefits determination that was unsupported by competent evidence. In addition, the plan administrator failed to consider or acknowledge the Social Security Administration's award of benefits to Mr. Potter.").

As to the third *King* factor—the deterrent effect of an award of attorney's fees on other persons under similar circumstances—plaintiffs argue that an award of fees here sends a clear message to insurers that they must ensure that their coverage policies are properly supported and not arbitrary and capricious. BCBS contends that an award of fees is not necessary to deter future conduct in light of the fact that Michigan now mandates broad ABA coverage. Plaintiffs respond that the Michigan mandate does not apply to self-funded plans, and thus BCBS could continue to deny ABA coverage to all self-funded plan participants, but for the Court's ruling in this case. "The key question in analyzing this third factor is ... whether the fee award would have a deterrent effect *on other plan administrators.*" *Gaeth,* 538 F.3d at 532 (emphasis added). The undersigned suggests that an imposition of attorney's fees and costs here will serve to deter other plan administrators from implementing internally inconsistent and ambiguous policies that are not properly supported by the record evidence, and thus the third factor weighs in favor of the plaintiffs. *See Caudill v. Sears Transition*

*Pay Plan,* 2011 WL 1595044, at \*11 (E.D.Mich. Apr. 26, 2011) ("The Court's ruling could certainly deter other plan administrators from utilizing such flawed methodologies in considering benefits."); *Blajei,* 2010 WL 3855239, at \*7 (finding the facts of the case were not so unique that they fail to serve any deterrence value to other insurance companies).

Finally, the fifth *King* factor addresses the relative merits of the parties' positions, which requires a consideration of the relative strength of the parties' positions. BCBS argues that plaintiffs' motion should be denied because, it contends, plaintiffs achieved only partial success in that the Court's decision was narrower in scope than what plaintiffs' initially sought. Specifically, plaintiffs stipulated to the removal of the subclass of individuals deterred from making a claim for ABA therapy by BCBS's policy, and the Court narrowed the class to only those whose claims were denied on the basis of the 2010 Statement. (Dkt. 124). Plaintiffs respond that they have achieved the first ever litigated class judgment on the merits providing autism benefits under ERISA, and that the Court modified the class to focus on the 2010–2012 policy statement and that plaintiffs agreed to exclude the "deterreds" subclass in no way lessens plaintiffs' entitlement to fees and costs. The undersigned notes that plaintiffs here have overcome the arbitrary and capricious standard of review, which is highly deferential to the insurer, and "a number of district courts in the Sixth Circuit have found that where a plaintiff overcomes an arbitrary and capricious standard of review, and obtains a remand to the plan administrator, the plaintiff's position had more merit." *Blajei,* 2010 WL 3855239, at \*8 (collecting cases); *see also Thies,* 839 F.Supp.2d at 894 ("Based on the decision to remand the case, the Court finds that the Plaintiffs' case is the one having more relative mer-

it," even though there has not been a final decision by the insurance company on remand). In remanding the benefits determination to BCBS, the Court found that "BCBS's medical policy is internally inconsistent, ambiguous, and most fatally, not supported by the evidence in the record," and thus remanded the class members' claims for ABA therapy for redetermination. The Court further found that "[a]ll class members who made a claim for ABA therapy that was denied by [BCBS] on the grounds that ABA therapy is deemed experimental or investigative shall have their denials overturned *and their claims paid, with interest.*" (Dkt. 125 (emphasis added)). Under the facts of this case, the undersigned suggests that plaintiffs' case has relatively more merit than BCBS's, and the fifth *King* factor weighs in favor of the plaintiffs. *See Blajei,* 2010 WL 3855239, at \*8. Therefore, based on the *King* factor analysis above, the undersigned suggests that plaintiffs are entitled to an award of attorney's fees and costs under § 1132(g)(1).

## B. Amount of Attorney's Fees and Costs

In their motion for attorney's fees and costs, plaintiffs ask the Court to award attorney's fees in the amount of $752,234 for 2015.25 hours of work, as calculated under the "lodestar method." (Dkt. 128). Plaintiffs subsequently amended that request in their Joint Statement to fees in the amount of $829,651, for additional work performed to date. (Dkt. 150). "The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004). The "lodestar" method is the "proper method for determining the

amount of reasonable attorney's fees." *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir.1995) (citations omitted). This approach involves two steps. First, the court calculates the "lodestar" by multiplying "the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Second, the court "may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir.2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).

### 1. Reasonable hourly rates

A reasonable hourly rate is generally calculated according to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Under Sixth Circuit law, "the 'prevailing market rate' is that rate which lawyers of comparable skill and experience can expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area where he maintains his office...." *Adcock–Ladd*, 227 F.3d at 350. The Sixth Circuit has further held that "[t]he appropriate rate ... is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Sykes v. Anderson*, 419 Fed.Appx. 615, 618 (6th Cir.2011) (quoting *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir.2007) (district court did not abuse its discretion by choosing billing rate that fell about halfway between the

parties' requested rates)); *see also Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986) (reviewing 131 attorney fee shifting statutes, including ERISA, and noting "[t]he statutes use the words 'reasonable' fees, not 'liberal' fees. Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.").

Prevailing attorneys must justify the reasonableness of a requested fee award. *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. 1541. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*; *see also Reed*, 179 F.3d at 472 (the party requesting the fee award bears the burden to produce evidence in support of the rates claimed).

Here, the relevant community is the Eastern District of Michigan. *See Adcock–Ladd*, 227 F.3d at 350 (the "relevant community" is the legal community within the court's territorial jurisdiction). Plaintiffs submit an hourly rate of $400 to $500 for partners, $310 for associates, and $120 for legal assistants, and assert that these rates are reasonable. Plaintiffs state that the State Bar of Michigan's 2010 Billing Rate for the 95th percentile for managing partners is $500 and for associates is $310, and that the 95th percentile hourly rate for attorneys practicing Consumer Law is $515 and for attorneys practicing Insurance Law is $500. Plaintiffs also assert

that the National Law Journal's 2012 Billing Survey had a median hourly rate of $501 for partners and $317 for associates, and according to the ABA Journal, the average hourly rate for partners is $661. Plaintiffs also refer to several cases within the Sixth Circuit approving hourly rates as high as $500, and attach declarations of Michigan attorneys attesting to the reasonableness of plaintiffs' hourly rates. (Dkt. 128). BCBS responds that the hourly rates submitted by plaintiffs are excessive, and that the billing surveys from the National Law Journal and the ABA should be rejected because they are based on nationwide data and not data regarding the "relevant community." According to BCBS, the 95th percentile rate for an attorney of Mr. Mantese's experience (30 years) is $425/hour, and the court in *Caudill* rejected a $500 per hour billing rate for an ERISA class action. *See Caudill*, 2011 WL 1595044 at *12. Further, BCBS points out that the Mantese Firm bills its associates at an hourly rate of $310, regardless of an associate's experience level, and plaintiffs have provided no information on the experience of the Mantese Firm's partners (other than Mr. Mantese) or associates who billed time on this matter. BCBS suggests an appropriate hourly rate for the Mantese firm partners should be no greater than $400, and, because there is no way to verify the experience level of the associates, the appropriate hourly rate for the associates should be no more than $203, the average rate for associates based on the 2010 State Bar Survey. BCBS further asserts that Mr. Conway, a sole practitioner with 16 years experience, should be entitled to an hourly rate of $255 to $300, based on the State Bar Survey.

First, addressing the claimed hourly rates of $500 for Mr. Mantese and $400 for his partners, the undersigned notes that plaintiffs list the 95th percentile rates for partners ($500–$515) and Mr. Mantese av-

ers that "rates of $500 per hour for senior partners to $310 for associates are fair and reasonable market rates" "[f]or attorneys practicing in the highly specialized field of complex commercial litigation." (Dkt. 128–24, 128–25). While Mr. Mantese and his partners might very well be able to command rates of $400 to 500 per hour in the open market for legal services, the test for awarding fees is not primarily the worth of the attorney performing the services. *See Gonter*, 510 F.3d at 618. Rather, the standard is a rate that is sufficient to encourage competent attorneys in the relevant community to undertake the representation of similarly-situated plaintiffs. *Id.* The 75th percentile hourly rate for a Managing Partner as indicated in the State Bar Survey is $315, and $350 for equity and non-equity partners. For attorneys with between 16 and 35 years of experience, the 75th percentile rate is $300.00 per hour and the 95th percentile rate is $425 to $450 per hour. The 75th percentile hourly rate for attorneys practicing Consumer Law is $350, and for attorneys practicing Insurance Law is $300. Considering all of these factors the undersigned concludes that $425.00 per hour is a reasonable attorney fee for the hours submitted by Mr. Mantese and that $350.00 per hour is a reasonable attorney fee for the hours submitted by Mr. Mantese's partners.

Second, addressing Mr. Conway's claimed hourly rate of $400, the undersigned notes that Mr. Conway is a sole practitioner. The 75th percentile hourly rate for sole practitioners is $250 and the 95th percentile hourly rate is $350 in the State Survey. For attorneys with 16 to 25 years in practice, the 75th percentile hourly rate is $300 and the 95th percentile hourly rate is $450. Considering all of these factors, the undersigned concludes that $350.00 per hour is a reasonable hour-

ly rate for the hours submitted by Mr. Conway.

Finally, as for the associates at the Mantese Firm, plaintiffs assert that all associates, regardless of experience level, are entitled to an hourly rate of $310, which represents the 95th percentile hourly rate for associates in the State Bar Survey. The undersigned notes that plaintiffs have not submitted any information on the experience level of those associates who worked on the case, including the years in practice for any of those associates, even though BCBS raised the absence of such information in its response to plaintiffs' motion for attorney's fees.[2] It is plaintiffs' burden, as the moving party, to establish a basis for their fees and the reasonableness of their claimed hourly rates. *See Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. 1541; *see also Reed,* 179 F.3d at 472 ("The party seeking attorneys fees bears the burden of documenting his entitlement to the award."). BCBS asserts that the Court should reduce all associate time to a rate of no more than $203 per hour, the average rate for associates based on the 2010 State Bar Survey. The undersigned notes that the 75th percentile hourly rate for associates in the State Bar Survey is $228. Considering all of these factors, the undersigned suggests that $250.00 per hour is a reasonable hourly

rate for the hours submitted by the Mantese Firm associates.

BCBS does not object to any of the hourly rates submitted by the paralegals who represented plaintiffs in this matter and those rates are therefore deemed reasonable.

### 2. Number of hours billed

Plaintiffs originally claimed to have spent a total of 1,975.25 hours prosecuting this action and sought an additional 40 hours to account for future attorney time necessary to complete work on the fee issue, for a total fee request of $752,234 for 2015.25 hours. (Dkt. 128). However, as of the filing of their Joint Statement, plaintiffs claimed to have expended an additional 228.25 hours, increasing their attorney's fees claim to $829,651, with $77,417 in fees incurred since filing the original motion. (Dkt. 150). BCBS argues that plaintiffs' billing records are defective for a number of reasons.[3] Specifically, BCBS argues that: (1) the records contain frequent instances of block billing; (2) the descriptions in the records are vague and provide insufficient detail to establish that the work was reasonably necessary to the litigation (i.e., telephone calls, emails, "meeting with GM," "consult with GM"); (3) the Mantese firm bills in quarter-hour increments instead of tenths of an hour, and Conway did not bill less than 0.3 for any

---

2. Following the hearing on this matter, plaintiffs filed a motion to file a supplemental brief and exhibit in support of their motion for attorney's fees and costs, in part seeking to provide the "credentials" of the associates who billed time to the case. (Dkt. 154). On November 6, 2013, the undersigned denied plaintiffs' motion, explaining that the issues addressed in the motion were raised in BCBS's response brief in opposition to plaintiffs' motion for attorney's fees and costs and that plaintiffs therefore had an opportunity to address those issues in their reply brief, but did not do so. (Dkt. 158).

3. BCBS stated in its response brief that plaintiffs failed to produce any billing records from the Mantese Firm after September 15, 2011, and argued the Court therefore should not allow recovery for any fees attributable to work performed by the Mantese Firm after that date. (Dkt. 130). However, plaintiffs subsequently submitted a corrected exhibit to their motion for attorney's fees and costs containing Mantese Firm billing entries through May 1, 2013, asserting that the document originally filed mistakenly did not contain all pages of that document. (Dkt. 131, 131–1). The undersigned finds therefore that plaintiffs' original error has been corrected.

task allegedly performed; (4) the records contain attorney billing for administrative, clerical or other non-compensable tasks (including press releases), including time as far back as September 18, 2009, over a year before the complaint was filed; and (5) plaintiffs' counsel has grossly overstaffed and overbilled this case. BCBS argues that the fees should be further reduced based on the insignificant results achieved (the class certified was smaller than the original class sought). BCBS asserts that $113,802.50 of the Mantese Firm attorney's fees (through September 2011) and $187,994.00 of the Conway firm attorney's fees, or a total of $301,796.50, should not be allowed for the reasons stated in their response. (Dkt. 130–2).

As the Sixth Circuit explained:

The key requirement for an award of attorney fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation. However, entries may be sufficient even if the description for each entry is not explicitly detailed.

*United States ex rel. Lefan v. Gen. Elec. Co.*, 397 Fed.Appx. 144, 148–49 (6th Cir. 2010). It is plaintiffs' burden to document "the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. "Where documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433, 103 S.Ct. 1933. And, where the application for fees is voluminous, the court may order an across-the-board reduction in compensable hours. *See Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 2008 WL 906031, at *4 (W.D.Mich. Mar. 31, 2008) (citation omitted). While "counsel need not 'record in great detail'

each minute he or she spent on an item ... 'the general subject matter should be identified' [and the billing entries have to be] read in the context of the billing statement as a whole and in conjunction with the timeline of the litigation." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 553–54 (6th Cir.2008).

#### a. Block billing and vague entries

BCBS argues that both the Mantese and Conway Firms' records contain frequent instances of block billing, and that "[i]n the Sixth Circuit, the law is clear that significant reductions in time are appropriate where block billing is used." *Bell v. Prefix, Inc.*, 784 F.Supp.2d 778, 787 (E.D.Mich.2011). BCBS also complains that the descriptions in plaintiffs' billing records are impermissibly vague. Plaintiffs concede to some block billing and "occasional generally phrased entries," but argue "[b]lock billing is not impermissible," citing *Renneker v. Comm'r of Soc. Sec.*, 2011 WL 6950510, at *8 (S.D.Ohio Dec. 8, 2011), *adopted as modified by* 2012 WL 12696 (S.D.Ohio Jan. 4, 2012), and that no reduction in fees is warranted. Plaintiffs further assert that they maintained sufficiently detailed records to discern that the time was reasonably expended on this litigation, and that their counsel "is not required to record in great detail how each minute of his time was expended," but rather "should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933.

"[B]lock billing refers to the 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Renneker*, 2011 WL 6950510, at *8 (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1285 n. 9 (10th Cir.1998)). It is well-settled that "[t]he documentation offered in support of the hours charged must be of

sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.,* 732 F.2d 495, 502 n. 2 (6th Cir.1984). "Attorneys who seek fees have an obligation 'to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended' on the case." *Imwalle,* 515 F.3d at 552.

As far as the undersigned is aware, while the practice of block billing is generally discouraged, the Sixth Circuit has never explicitly rejected that practice. However, courts in this district have addressed block billing and have reduced fees because of a parties' use of vague block billing. *See, e.g., United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. Kelsey–Hayes Co.,* 2013 WL 2634815, at *4 (E.D.Mich. June 12, 2013) (reducing class counsel's requested fees, in part, "because of their use of vague block billing entries such as "review documents," "research legal issues," and "plan strategy")"; *Gratz v. Bollinger,* 353 F.Supp.2d 929, 939 (E.D.Mich.2005) (reducing the requested fees by ten percent due block billing and vague entries because block billing frustrates the Court's ability to determine whether a reasonable number of hours were expended on each tack). Other courts in the Sixth Circuit similarly recognize that "[c]ourts unquestionably have authority to downwardly adjust the fee claims because of block billing and vague entries." *Swapalease, Inc. v. Sublease Exchange.com, Inc.,* 2009 WL 1119591, at *2 (S.D.Ohio Apr. 27, 2009); *see also Heath v. Metro. Life Ins. Co.,* 2011 WL 4005409, at *10–11 (M.D.Tenn. Sept. 8, 2011) (reducing fees by 20% because

counsel's block billing made it impossible to "ensure with a high degree of certainty that the hours allegedly expended were in fact expended in a reasonable, non-duplicative fashion").

Recognizing that the Court does have discretion in this area, the undersigned concludes that the billing entries submitted by plaintiffs contain numerous instances of block billing in which all work by a time keeper performed on a particular date is included, without specifying how much time was allotted to each individual task, such as:

- 10/5/11—WIP—6.75 hours—Research regarding administrative record; emails.
- 11/17/11—WIP—11.50 hours—Work on answer in opposition to petition for appeal; correspondence with GM regarding same; further work on answer in opposition.
- 5/4/12—JJC—8.0 hours—Prepare outline and draft Motion for Judgment on the Administrative Record; Review Blue Cross Administrative Record. Correspondence with co-counsel
- 6/12/12—WIP—4.0 hours—Research; meeting with BS.
- 7/10/12—BMS—12.50 hours—Work on reply brief in support of motion for judgment; research issues regarding same; email with GM and JJ regarding same; meeting with GM

(Dkt. 128–4; Dkt. 131–1). In addition, the billing records contain numerous vague time entries throughout, generally referring to tasks, meetings or communications, such as "Meeting with GM," "emails," "Conference with Co–Counsel," "Consult with DH," "reviewed correspondence," "research," and "telephone call with JC," without any indication of the general subject matter of such communications or tasks, the number of communications or

tasks, or any explanation to justify the time devoted to those tasks and communications. (Dkt. 128–4; Dkt. 131–1). The undersigned suggests that such time entries do not provide sufficient detail as to the tasks performed by plaintiffs' attorneys. *See, e.g., Kinder v. Northwestern Bank,* 2012 WL 2886688, at *5 (W.D.Mich. June 5, 2012) ("[V]ague time entries such as "telecon local counsel," "emails with defense counsel," and "emails re settlement" are plainly insufficient.") (citing *Gratz,* 353 F.Supp.2d at 939 (entries such as "office conference," "research," and "review article" deemed inadequate)), *adopted by* 2012 WL 2886701 (W.D.Mich. Jul. 13, 2013). The common practice in this circuit, and in others, when the court is confronted with a request for the award of attorney's fees in the face of inadequate billing records, is "across-the-board fee reductions." *See Cleveland Area Bd. of Realtors v. City of Euclid,* 965 F.Supp. 1017, 1021 n. 5 (N.D.Ohio 1997) (collecting cases); *Gratz,* 353 F.Supp.2d at 938 (opting to reduce the hours expended by a percentage amount); *In re Pierce,* 190 F.3d 586, 593–94 (D.C.Cir.1999) (imposing a ten percent fee reduction for insufficient billing entries, making it impossible for the court to determine the reasonableness of the billings in terms of necessity and amount of time expended). The undersigned concludes that the total fee request should be reduced by five percent (5%). This is appropriate in light of plaintiffs' burden of production and in light of the "block billing" and vague entries included in the billing records and the otherwise insufficient documentation.

**b. Billing in large time increments**

BCBS contends the Mantese Firm bills in quarter-hour increments, and that while the Conway Firm bills in tenths of an hour increments, Mr. Conway did not bill less than .3 hours for any tasks performed. BCBS asserts that plaintiffs' attorney's fees should be reduced because the larger billing increments likely led to overbilling in many instances. Plaintiffs respond that BCBS's argument is baseless and "[a]s long as the total number of billable hours is reasonable in relation to the work performed, the award should be affirmed," quoting *B & G Mining, Inc. v. Dir., Office of Workers' Comp. Programs,* 522 F.3d 657, 666 (6th Cir.2008).[4]

The Sixth Circuit recently stated that "[w]hether quarter-hour billing is reasonable is a matter within the discretion of the district court." *Yellowbook, Inc. v. Brandeberry,* 708 F.3d 837, 849 (6th Cir.2013) (citing *Bench Billboard Co. v. City of Toledo,* 499 Fed.Appx. 538, 549 (6th Cir.2012) (upholding 7.5% reduction for unreasonableness), *cert. denied,* —— U.S. ——, 133 S.Ct. 1252, 185 L.Ed.2d 181 (2013)). As the district court noted on remand, "[a]s one district court has observed, 'very few telephone calls last more than one-tenth of an hour and . . . it rarely takes more than one-tenth of an hour to read an incoming letter or write a short outgoing letter.'" *Yellow Book USA, Inc. v. Brandeberry,* 2013 WL 2319142, at *8 (S.D.Ohio May 28, 2013) (quoting *In re Tom Carter Enters., Inc.,* 55 B.R. 548, 549 (Bankr.C.D.Cal. 1985)). The Sixth Circuit explained, however, that because the concern with quarter-hour increments is over-billing, only fee reductions, not fee denials, are a proper exercise of the court's discretion. *Yellowbook,* 708 F.3d at 849 (explaining that the purpose of reductions is to counter over-billing, not punish the failure to use

---

4. The undersigned notes that in *B & G Min.,* the applicable regulations in that case *required* that the fees be submitted in quarter-hour increments. *B & G Mining,* 522 F.3d at 666 (citing 20 C.F.R. § 802.203(d)(3)).

tenth-of-an-hour billing); *see also Yellow Book USA*, 2013 WL 2319142, at *8 (on remand, reducing Yellowbook's fee award by 5% "due to billing in quarter-hour increments, a fee-enhancing mechanism, and because Yellowbook's attorney charged a regular hourly rate for travel"). Based on a review of plaintiffs' fee submission, the undersigned concludes that the billing increments used in this matter are not unreasonable and accordingly no reduction in fees is necessary for this reason.

### c. Billing for administrative/non-compensable tasks and excessive and duplicative billing

BCBS alleges that plaintiffs have improperly billed time for administrative and other non-compensable tasks and that plaintiffs have grossly overstaffed and overbilled this case from the start, noting that eight of the nine attorneys at the Mantese Firm have billed time on this matter, in addition to Mr. Conway and paralegal time from both firms. BCBS asserts, as an example, that six attorneys allegedly worked on plaintiffs' July 2011 summary judgment motion and billed in excess of 35 hours on this motion, which was subsequently denied because it was not based on the administrative record. (Dkt. 63). BCBS further contends that plaintiffs' counsel spent over 53 hours preparing for and arguing two motions in one hearing—plaintiffs' motion for class certification and BCBS's motion for summary judgment—which time did not include the time the firms spent drafting the underlying briefs on the two motions. BCBS asserts that this is a gross duplication of effort and an unreasonable amount of time to bill for these two discrete tasks. And, BCBS argues, plaintiffs' counsel billed for discovery even after the Court ordered, on December 16, 2011, that the case was to be decided on the administrative record alone. BCBS states that this court has held

"[w]hile a party is certainly entitled to having two attorneys represent him, the Court finds that it is not reasonable to consistently bill a party for two attorneys to do the same work/review each other's work." *Bell*, 784 F.Supp.2d at 787.

Plaintiffs argue in response that they did not overstaff or overbill this case, but that the time billed was necessary because of the significant complexity of both the scientific and legal issues in this case and the difficulty of opposing a well-funded opponent. Plaintiffs also assert that time spent on discovery is compensable and reasonable, given that the scheduling order provided for discovery to be completed by November 30, 2011, and BCBS itself served the first discovery in this case on June 15, 2011, and that plaintiffs had reason to seek discovery here, given BCBS's dual role as payor and administrator, citing *Moss v. Unum Life Ins. Co.*, 495 Fed. Appx. 583, 596–97 (6th Cir.2012) ("[D]iscovery is limited in cases arising under ERISA" but is allowed in order to allege "bias" on the part of the administrator).

BCBS also argues that the Court should disallow fees expended on publicity and clerical and administrative tasks (such as "file organization," "work on press release," "numerous calls and emails from media," and "proofread correspondence and filing"), as well as for time spent before plaintiffs' engagement of the Mantese Firm. Plaintiffs respond that they did not include any "non-legal" tasks in their billing entries, and that the alleged non-legal tasks BCBS raises were inextricably intertwined with purely legal tasks performed by attorneys. Plaintiffs also contend that the "media" or "public relations" time entries for press releases were part of plaintiffs' ongoing and important obligations to initiate and maintain communication with as many class members as possible regarding this case. Regarding the pre-litigation

billing entries, plaintiffs assert that Potter signed the engagement letter on September 27, 2009, and that the only time entry prior to that date was for 0.25 hour for a telephone call with Potter, and that plaintiffs are entitled to time for investigating and researching possible litigation before filing the complaint.

Statutes conferring attorney's fees on prevailing parties are "not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Coulter*, 805 F.2d at 149 n. 4 (citation omitted); *see also Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983) ("Nor do [courts] approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."). When determining whether hours claimed by a party were reasonably expended, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir.1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). And, "[w]hile there is nothing inherently unreasonable about making an award for time spent by two or more lawyers engaged in the same representation, counsel bears the burden of showing his or her specific contribution." *Gratz*, 353 F.Supp.2d at 942 (citation omitted). "[I]f the same task is performed by more than one lawyer, multiple compensation

should be denied. The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services." *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir.1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council For Clean Air*, 483 U.S. 711, 725, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). "Decisions concerning which tasks an attorney performs and involving the allocation of personnel ... will be left to the discretion of the professional unless the allocation is egregious [because] ... [c]ompetent counsel are in the best position to determine how their time and the time of their associates can best be allocated." *Communities for Equity*, 2008 WL 906031 (citations omitted). However, courts have not allowed attorney's fees for administrative tasks such as "organized file," "sorting questionnaires" "filing" and "organize meeting." *See, e.g., Caudill*, 2011 WL 1595044, at *14–15; *Gratz*, 353 F.Supp.2d at 941 ("Plaintiffs should not be compensated for the hours their attorneys expended on media and public relations efforts").

BCBS has presented two instances where plaintiffs' billing records show multiple attorneys engaged in the same tasks, with no indication of the specific contribution the various lawyers made with respect to that task beyond simply reviewing another attorney's work. For example, BCBS points out that six plaintiffs' attorneys billed over 35 hours over three days for work reviewing and revising plaintiffs' motion for summary judgment, and billed over 53 hours for preparation for a hearing on two other motions, not counting the time billed briefing the two underlying motions. Further, the undersigned notes, based on its review of BCBS's spreadsheet of objections to plaintiffs' billing records, that five attorneys billed approximately 27 hours working on plaintiffs' response to

BCBS's motion for reconsideration in August 2011. As the court noted in *Gratz,* "a reduction of the [plaintiffs'] attorneys' hours only is appropriate where there is no indication of the specific contribution the various lawyers made with respect to that task beyond simply reviewing another attorney's work." *Gratz,* 353 F.Supp.2d at 942. "Thus, courts have reduced fee awards where the requested fee reflected duplication of services, excessive time for simple or routine tasks, the use of too many attorneys, excessive conferencing, unnecessary consultant work, or the performance of clerical tasks by legal professional." *Fharmacy Records v. Nassar,* 729 F.Supp.2d 865, 884–85 (E.D.Mich.2010) (citations omitted), *aff'd,* 465 Fed.Appx. 448 (6th Cir.), *cert. denied,* —— U.S. ——, 133 S.Ct. 545, 184 L.Ed.2d 341 (2012); *see also Hensley,* 461 U.S. at 433, 103 S.Ct. 1933 ("The district court . . . should exclude . . . hours that were not 'reasonably expended.' Cases may be overstaffed, and the skill and expertise of lawyers vary widely."); *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.,* 574 F.3d 852, 858 (7th Cir.2009) ("[O]verstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees."); *Hudson v. Pittsylvania Cnty., Va.,* 2013 WL 4520023, at *7 (W.D.Va. Aug. 26, 2013) ("Although it is not *per se* unreasonable for a client to be represented by multiple attorneys in court proceedings, when approving fees for those attorneys, courts require a 'distinct contribution by their presence or participation.' "). "Nonetheless, 'courts have held that it is improper to engage in an "ex post facto determination of whether attorney hours were necessary to the relief obtain." The issue "is not whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." " *Fharmacy Records,* 729 F.Supp.2d at 885 (citations omitted).

Based on the above, the undersigned concludes that attorney time billed for "telephone call with client" is compensable, as is attorney travel time. *See Caudill,* 2011 WL 1595044, at *15 (travel time is ordinarily billable and therefore appropriately included in an award of attorney's fees). However, attorney time for clerical tasks such as "file organization" and "proofread correspondence and filing" is not compensable and fees for such time should be excluded. *See id.* at *14–15; *Allison v. City of Lansing,* 2007 WL 2114726, at *1 (W.D.Mich. July 19, 2007) ("It is not appropriate to award attorney fees for strictly clerical tasks.") (collecting cases). Thus, the following time entries should be excluded:

- 7/18/11—SRP—0.75 hours—Retrieved documents from Wayne Library
- 1/12/11—ZMK—1.0 hours—File organization for case
- 2/8/11—ZMK—2.0 hours—File organization for case
- 2/16/11—ZMK—2.0 hours—Continue and complete file organization.
- 8/13/12—TMD—1.0 hours—Proofread correspondence and filing

Plaintiffs assert that the time spent on press releases was part of their ongoing obligation to initiate and maintain communications with as many class members as possible. The undersigned notes that this time is minimal and will not be excluded. Finally, as to BCBS's allegations of overstaffing and excessive billing, while the undersigned generally allows a fair amount of deference to the attorneys as to whether such time was reasonably necessary, the undersigned concludes that the specific time entries identified above—(1) six attorneys billing over 35 hours for plaintiffs' motion for summary judgment on July 18,

2011 through July 21, 2011, (2) five attorneys billing over 27 hours for plaintiffs' response to BCBS's motion for reconsideration July 30, 2011 through August 2, 2011, and (3) billing over 53 hours for preparation for a hearing from June 8, 2011 through June 23, 2011—as identified in BCBS's spreadsheet of objections to plaintiffs' billing records, are excessive and unreasonable. Accordingly, these amounts should be reduced by 25%. However, the undersigned declines to reduce plaintiffs' fee request for BCBS's remaining objections.

#### d. Insignificant results

BCBS argues that plaintiffs' fee award should be reduced because it contends that plaintiffs achieved only "insignificant results." BCBS asserts that plaintiffs sought certification of a class of claimants going back to 2004, but the final class consisted only of those individuals whose claims were denied based on the 2010 Statement, which consists of, at the very most, 119 persons. BCBS argues that any fee award should be reduced because the Court decertified the majority of plaintiffs' class, citing *Gradisher v. Check Enforcement Unit, Inc.*, 2003 WL 187416 (W.D.Mich. Jan. 23, 2003) (downward adjustment warranted where "[e]ven though a class was certified, no recovery was made on behalf of the class because the Court ultimately decertified the class"). BCBS further argues that Mr. Conway spent at least 12.6 hours compiling and defending plaintiffs' version of the administrative record, which was ultimately struck by the Court. Plaintiffs respond that the time they spent on tasks that were not ultimately successful is still reasonable and compensable, citing *Wooldridge v. Marlene Industries Corporation*, 898 F.2d 1169, 1177 (6th Cir.1990) ("[T]he standard is whether a reasonable attorney would have believed the work to be rea-

sonably expended in pursuit of success at the point in time when the work was performed.").

The undersigned notes that this case is not like *Gradisher*, cited by BCBS, because unlike the plaintiff in *Gradisher*, plaintiffs here have achieved a recovery for the class. A plaintiff prevails "when the actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *See Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Here, the Court declared BCBS's policy arbitrary and capricious and ordered plaintiffs' claims remanded for redetermination, and thus plaintiffs achieved "actual relief on the merits." This is simply not an "insignificant result." *See Cockrell v. Hartford Life & Accident Ins. Co.*, 2013 WL 2147454, at *6–7 (W.D.Tenn. May 15, 2013) (refusing to classify plaintiff's obtaining of a remand as a "partial success" when it was defendant's failure to consider and adequately analyze plaintiff's claim that made judgment in plaintiff's favor possible). Moreover, the undersigned also recognizes that in some cases, such as here, plaintiffs' "claims for relief will involve a common core of facts or will be based on related legal theories." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. When this occurs, counsel's time is devoted more generally to the litigation as a whole, "making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* ("Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee."). The undersigned therefore declines to reduce plaintiffs' fee award for these reasons. *See Caudill,*

2011 WL 1595044, at *16 (declining to reduce plaintiffs' attorney's fees based on the fact the class certified is smaller than the class size plaintiffs originally sought because plaintiffs were very successful in this lawsuit).

### 3. Fee Enhancement

Plaintiffs seek a fee enhancement "sufficient to compensate for any amount by which the lodestar is less than" the amount stated in the motion. BCBS objects to the request for an enhancement, contending that enhancements should be rarely given and that plaintiffs have not justified an enhancement in these circumstances.

The United States Supreme Court has held that fee enhancements may be awarded in "rare" and "exceptional" circumstances where the lodestar fee would not have been "adequate to attract competent counsel." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010) (attorney seeking a fee enhancement must provide "specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel[.]' "). An enhancement may be appropriate when: (1) the hourly rate does not adequately measure the attorney's true market value; (2) the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted; or (3) an attorney's performance involves an exceptional delay in the payment of fees. *Id.* The undersigned concludes that it is not necessary to enhance the fee award in this case because the lodestar calculated above adequately compensates plaintiffs for the risks inherent in this type of litigation and plaintiff has failed to establish that this is the "rare" or "exceptional" case requiring enhancement of fees. Accordingly, plaintiffs' request for an enhancement is denied.

### 4. Costs

Plaintiffs originally sought $9,464.52 in costs pursuant to Fed.R.Civ.P. 54(d), 28 U.S.C. § 1920 and 29 U.S.C. § 1132(g) (Dkt. 128), and amended that amount to $10,049.12 in their Joint Statement. (Dkt. 150). Plaintiffs assert that a court may grant an award of expenses that includes expenses not enumerated in 28 U.S.C. § 1920 provided they are the type of expenses that an attorney would normally pass along and bill separately to a client. *See Gradisher*, 2003 WL 187416; *Vick v. Metro. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 41708, at *18–20 (E.D.Mich. June 22, 2006). BCBS responds that plaintiffs are not entitled to recover costs that are not listed in 28 U.S.C. § 1920, citing *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) ("We are aware of no authority to support the counter-intuitive assertion that the term 'costs' has a different and broader meaning in fee-shifting statutes than it has in the cost statutes that apply to ordinary litigation."). BCBS thus argues that telephone and postage costs are not taxable under 28 U.S.C. § 1920, and neither are facsimile costs, travel expenses, a luncheon between plaintiffs' attorneys, or the costs of news releases, and thus a total of $2,082.07 should be deducted from plaintiffs' claimed costs. *See King v. Gowdy*, 268 Fed.Appx. 389, 391 (6th Cir.2008) (holding "[d]istrict courts may not award costs not authorized by the statute [i.e., 28 USC 1920]").

Like attorney's fees, the Court has broad discretion to award costs to parties in ERISA actions who have shown some degree of success on the merits. *See* 29 U.S.C. § 1132(g)(1) (providing that the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party."); *Hardt*, 560 U.S. at 254, 130 S.Ct. 2149. Rule 54(d)(1) provides

that "unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R.Civ.P. 54(d)(1). Further, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" upon motion under Rule 54(d)(2), subject to Rule 23(h) procedures. Fed.R.Civ.P. 23(h). ERISA is silent on those costs other than attorney fees that the Court may tax under the authority of Rule 54(d). Regarding the scope of costs allowed in an ERISA action, the courts in the Sixth Circuit are not consistent as to whether "costs" include nontaxable costs. *Compare, e.g. Thies,* 839 F.Supp.2d at 896 (ERISA's attorney fee provision, which allows the recovery of costs in the Court's discretion, is not limited by statute limiting taxation of certain costs), *and Moore v. Menasha Corp.,* 2013 WL 308960, at *5–6 (W.D.Mich. Jan. 25, 2013) (ERISA action awarding, without explanation of costs allowed under § 1920, costs for computerized research, telephone and other expenses not allowed under § 1920), *with Electric Energy, Inc. v. Lambert,* 2011 WL 1883986, at *6 (W.D.Tenn. May 17, 2011) ("28 U.S.C. § 1920 generally governs awards of costs under federal law, including ERISA actions, and provide for only specific kinds of costs.") *and Hall v. Ohio Educ. Ass'n,* 984 F.Supp. 1144, 1145 (S.D.Ohio 1997) ("28 U.S.C. § 1332(g)(1) allows the court to award those costs of action usually allowed under 28 U.S.C. § 1920."). However, a review of decisions from other jurisdiction

supports the view that costs under ERISA include nontaxable costs as a part of a reasonable attorney's fee, as long as those costs are reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services. *See, e.g., DeBartolo v. Health & Welfare Dept. of the Constr. & Gen. Laborers' Dist. Council of Chicago & Vicinity,* 2011 WL 1131110, at *10 (N.D.Ill. Mar. 28, 2011) (collecting cases awarding nontaxable costs for computerized research, postage and copying as part of a reasonable attorney's fee in ERISA petition); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,* 2008 WL 2600364, at *14 (E.D.Pa. June 26, 2008), *aff'd,* 579 F.3d 220 (3d Cir.2009), *cert. denied,* 559 U.S. 940, 130 S.Ct. 1546, 176 L.Ed.2d 116 (2010) (awarding taxable and nontaxable costs in an ERISA action and citing, in part, *Algie v. RCA Global Commc'n, Inc.,* 891 F.Supp. 875, 898 & n. 13 (S.D.N.Y.1994) (awarding "reasonable out-of-pocket expenses associated with this lawsuit" and noting that "Section 502(g)(1) of ERISA refers to an award of 'costs,' but that term apparently covers not only taxable costs under 28 U.S.C. § 1920, but also other disbursements that are customarily charged to the client" (listing cases)), *aff'd,* 60 F.3d 956 (2d Cir.1995)). Further, the Sixth Circuit has allowed reasonable non-taxable costs as a part of the prevailing party's "reasonable attorney's fee" under other fee-shifting statutes. *See, e.g., Northcross v. Bd. of Educ. of Memphis City Schs.,* 611 F.2d 624, 639 (6th Cir.1979) (overruled on other grounds).[5] Under such circumstances, the

---

5. Although *Northcross* involves § 1988, not ERISA, "[t]he language of [42 U.S.C. § 1988(b) and 18 U.S.C. § 1964(c)] ... is similar to the ERISA provision at issue here[.]" *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.,* 501 F.3d 283, 293 (3d Cir.2007); *Independent Fed'n of*

*Flight Attendants v. Zipes,* 491 U.S. 754, 759 n. 2, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989) (emphasizing that "fee-shifting statutes' similar language is a strong indication that they are to be interpreted alike") (quotation marks omitted).

court has the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as reasonable photocopying, paralegal expenses, and travel and telephone costs. *Id.* ("The authority granted in section 1988 to award a reasonable attorney's fee include[s] the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services."). The undersigned therefore is more persuaded by those courts allowing the recovery of costs in addition to those taxable under § 1920. *See Thies,* 839 F.Supp.2d at 886 (noting no "authority that would lead the court to find that the express language of 29 U.S.C. § 1132(g)(1), which allows the recovery of costs in the Court's discretion, is limited by 28 U.S.C. § 1920."); *Hargrove v. Eaglepicher Corp.,* 2012 WL 1668152, at *2 (E.D.Mich. May 10, 2012) (approving award of costs, including nontaxable costs, in an ERISA class action); *International Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Ford Motor Co.,* 2007 WL 4571648, at *1 (E.D.Mich. Dec. 27, 2007) ("Class counsel are entitled to fees and nontaxable costs pursuant to ERISA for their work since July 31, 2006."); *see also Yip v. Little,* 519 Fed.Appx. 974, 977 (9th Cir. 2013) ("Costs are a category of expenses distinct from attorney's fees under 29 U.S.C. § 1132(g)(1). However, if it is 'the prevailing practice in the local [legal] community' to separately bill reasonable litigation expenses to the client, lawyers may recover those expenses as 'attorneys fees.'" (internal citation omitted)). Therefore, the undersigned concludes that plaintiffs' claimed telephone, postage, facsimile and travel costs should be allowed, but that plaintiffs' claimed costs for meals and

press releases should not be allowed, as plaintiffs have not established that these fees would normally be charged to the fee-paying client.

BCBS also argues that plaintiffs' costs should be reduced because their expense records are insufficiently detailed. Specifically, as to copying charges, BCBS contends that the Conway Firms records simply state "Copies, Prints, and/or Scans," and the Mantese Firm records simply refer to "copying charges" per month, but that plaintiffs fail to describe the necessity of obtaining such copies. BCBS further argues that $0.25/copy (as charged by the Mantese Firm) is too high, and that $0.10 is reasonable. *See Bell,* 784 F.Supp.2d at 792 (holding $.10 per copy is a reasonable rate for reimbursement) (citations omitted). Thus, BCBS argues that a total of $3,013.45 should be subtracted from plaintiffs' claimed costs. The undersigned notes that copying costs are taxable under 1920(4), provided that "the copies are necessarily obtained for use in the case." With regard to photocopying charges, copying costs are generally limited to "those costs incurred for copies of documents prepared for the court's consideration or for the opposing party." *Moore,* 2013 WL 308960, at *5 (quoting *Pion v. Liberty Dairy Co.,* 922 F.Supp. 48, 53 (W.D.Mich.1996)). Likewise, "[c]opies obtained only for the convenience of counsel, including extra copies of filed papers and correspondence, are ordinarily not recoverable." *Id.* (quoting *Charboneau v. Severn Trent Labs.,* 2006 WL 897131, at *1 (W.D.Mich. Apr. 6, 2006)). "The burden is on the party seeking reimbursement for photocopying costs to show that the copies were necessary for use in the case." *Id.* However, the undersigned notes that, as a practical matter, it would be difficult to document what every photocopy made in the course of pursuing a lawsuit of this

nature was used for. That is not to say it would be impossible to do that when a large number of copies are made for a relatively discrete purpose. For example, plaintiffs identified over 2500 copies made for the month of July 2011 and over 1300 copies made for the month of August 2012. It is reasonable to assume that in those time periods some specific purpose for making a significant number of copies could have been documented. Recognizing that documentation was lacking to some degree in this case as to the purpose for the copies, a ten percent (10%) reduction in the amount requested for copies will be made. Further, this court has held that $.10 per copy is a reasonable rate for reimbursement, and the undersigned concludes that $.10 per copy would be a reasonable rate in this case. *See Bell,* 784 F.Supp.2d 778, 792 (E.D.Mich.2011). Therefore, plaintiffs' copying costs should be reduced by these amounts.

BCBS further argues that plaintiffs cannot recover for costs of computer legal research because plaintiffs are already seeking attorney time spent researching, and to allow costs for research expenses would produce a windfall, and that $3,524.01 should be subtracted. As explained above, costs and expenses that an attorney generally charges to a client are recoverable in an ERISA action. While the Sixth Circuit has not specifically addressed the issue of whether computer legal research, such as WESTLAW or LEXIS, is recoverable, a number of other courts have done so. *See, e.g., Gratz, supra,* at 945 (computerized research costs awarded but reduction made based on costs being "exhorbitant"); *Ousley v. General Motors Ret. Program for Salaried Emps.,* 496 F.Supp.2d 845, 852 (S.D.Ohio 2006) (awarding nontaxable costs under § 1132(g)(1) for computerized legal research, process server, and Federal Express expenses). The undersigned believes those judges who have awarded the costs of computerized research are in the majority and the reasons for doing so are well founded. Plaintiff is awarded their costs for computerized research, which the undersigned finds are reasonable given the length and complexity of the litigation.

## III. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiffs' motion for attorney's fees and costs be **GRANTED in part,** as specified in this Report and Recommendation. The attorneys' hourly rates shall be adjusted as follows:

| | |
|---|---|
| Gerald Mantese | $425.00 |
| Mantese Firm Partners | $350.00 |
| Mantese Firm Associates | $250.00 |
| John Conway | $350.00 |

Further, the time entries for clerical tasks identified herein, totaling 6.75 hours, shall be excluded, and the hours identified in this report as excessive and overstaffed shall be reduced by 25%. Finally, the total number of hours shall be reduced by 5% to account for vague and block billing entries included in the billing records. As for costs, plaintiffs' claimed costs for meals and press releases are not allowed, and costs for copies shall be reduced to $.10 per copy and the total costs for copies shall be reduced by 10%. Plaintiffs must recalculate the amount of attorney's fees and costs sought in accordance with this Report and Recommendation and resubmit their adjusted final request to the Court by **February 20, 2014.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505 (6th Cir.1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: Jan. 30, 2014.